Good morning Your Honor, AUSA Pierpont here, are you able to see my video? We don't? Now we do. Thank you. Okay, Ms. Barth. Thank you. Thank you. Good morning again. May it please the Court. Michelle Barth on behalf of the appellant, Mr. Carl Roye. The first issue I'd like to discuss with the Court is how the jury's instructions were inadequate. Here, the jury was not charged on an element of the offense. Count 1 charged a conspiracy to commit murder predicated on a violation of Connecticut state conspiracy law. That state predicate requires proof of an overt act as an element of the offense. Now, the government in response argues that there is no error because of this Court's decisions in Begaric and Diaz, and argues that they have not been expressly overruled. And while that's true, Counsel, let's assume that Diaz has been at least weakened or overruled and so on. But here, didn't the jury find your client guilty of murder? And if that is so, then how could the error in the charge be anything but harmless? Because they found something that met the requirement. So while you may have a good argument about Diaz, how is it anything but harmless in this case? Well, I think that there was prejudicial impact here, and this error was not harmless beyond all reasonable doubt. Because the argument that a conviction on one count satisfies the elements of a separate count has some intuitive appeal. But ultimately, it gives the government a free pass on an element. It lessens their burden, and that is an important point and impactful in a closed case like this one. I think we should remember that... I'm not sure I understand. Excuse me. I'm not sure I understand. They would have had to have found the murder proved beyond a reasonable doubt. And so, to the extent that we are looking at prejudice, I don't understand how you can argue that your client was prejudiced by the failure to say, well, on the conspiracy, you have to prove an overt act. When they're also charged on the murder, you have to find the substantive crime, and they say, yes, they find it. How are you prejudiced? Well, I understand the argument, but it does require the court to delve into the jury's thought process. And it does so by making... Not at all. We have their verdict. We have their verdict. Finding an overt act. Murder. We do have their verdict, but the Supreme Court has rejected that kind of reasoning in the context... What's the prejudice? What's the prejudice? Yeah. So, the Supreme Court has rejected that kind of reasoning in the context of inconsistent verdicts. In that context, when defendants make the argument that an acquittal on one count means they should have been acquitted on another nearly identical count, the Supreme Court has said, you don't delve into a jury's thought process in that way. Again, I think we're sounding a bit like a broken record. But if what you're saying is the jury should have been told on one count that they needed to find A, and they weren't told that. But then, on another count, they actually found A, plain and simply. They found A. Then how did it harm you that they weren't told that they had to find A to find guilt on the other count? Because each count has to be treated separately. And the government needs to be put to its burden of proof on each count. And I think that that analogy to inconsistent verdicts and the Supreme Court's jurisprudence surrounding that is a good point. There was no objection here either, to the jury charge. So you'd have to show a plain error, which requires a serious effect on integrity, etc. And how do you have that, given the conviction on the murder count? Well, I think, circling back a little bit, that the government's evidence on count one was motion. Now, that was reversed on appeal. But the point is that in close cases, giving the government any advantage by not making a proven element on one count is unfair and runs counter to the Fifth and Sixth Amendment's requirement that the jury pass on all elements on each count. And so we're engaging in a little guesswork saying, well, they found a murder on count five. That requires us to go into the jury's thought processes and decide, well, this is our best guess. They would have found the same thing on count five. No prejudice in situations where the jury doesn't make a finding where the evidence is overwhelming. So to that extent where we're not guessing at all, we have a jury verdict, I don't know how you can, I mean, what you're arguing for suggests that there can't be harmless error in situations where there's an element failure. And that's not so neater and other Supreme Court cases have made claim that a charging error is subject to harmless error analysis. So are you at, how do you reconcile your argument with that precedent? Well, I guess that when we are looking at prejudice, we're looking at overall evidence on the count. And I guess I reconcile that argument by pointing back to the district court's granting of that Rule 29 motion on count one. It indicates that the evidence was extraordinarily weak on that count. And had the government been put to its full burden on that count by having those elements explained to the jury and required that the jury pass on those elements in a way. So in close cases, any error, I think, weighs on the side of finding it harmful, especially when we're talking about an element of the offense. I don't think it's a groundbreaking proposition to suggest that it's important for a jury to pass on every single element on every single count. And when a case is closed, I think... Your argument would be a very interesting and powerful one if the jury had hung on the murder charge. If they had not been able to find murder, then you would have an interesting and strong argument that finding guilt on the other one when they weren't charged that they needed to find an argument and we'd have to see how Diaz and so on survived or not. But when there is instead a clear separate argument, even apart from plain error, that the jury found what they had to be charged that they had to find, it's very hard. I'm sorry, but it's very hard for us to see where it's going. Well, I certainly understand the court's point. And I think that count one was a close call for the jury. I understand that they did not hang on the murder count. But I still go back to the basic proposition that in close cases, when a jury instruction is missing an element, the government is getting a free pass. It is being allowed to circumvent its burden of proof. And that runs counter to the Fifth and Sixth Amendment. I would like to talk a little bit, if I could. I'm not sure where I am with time. You're over your time. Okay. Well, I'd like to, in my rebuttal, just make a few comments about the Eighth Amendment claim. Thank you. All right. We'll hear from the government. Thank you, Your Honors. Good morning. My name is John Pierpont. I'm an AUSA in Connecticut, and I represent the United States in this matter. Given that the discussion was just about the jury charge, I'll jump straight to that and specifically talk a little bit about the plain error standard of review. I believe, as Your Honors had indicated, there's an insurmountable difficulty with the defendant's argument, specifically as it goes to whether it affected his rights. And so, let's be clear about this. The charge here, Your Honor, was Vicar murder and conspiracy to commit murder, where the underlying state predicate act was conspiracy to murder. The murder itself was found. There was, in fact, a conspiracy to commit murder that was found as well. It is certainly true that the charge did not include an overt act. And in the government's view, and I'm happy to talk about that, that was not required under Second Circuit case law. However, that notwithstanding, they found the object of the conspiracy was committed by finding that murder. And so, therefore, even if the overt act charge had to be included, as Your Honors just indicated in speaking to my colleague at the bar, there's not going to be prejudice here that the defendant would be able to show. With respect to the second prong, Your Honors, the second prong requires there to be a clear error, a clear and obvious error here. And what we have here is we have two cases, Begaric and Diaz, on one hand, that have never been explicitly overruled, although they have been subject to criticism, certainly in the cases Pimenthal and Carrillo, but they've never been explicitly overruled. In fact, Your Honors, there are two unpublished opinions from as late as 2018, and granted they're unpublished opinions, they're cited in the government's brief on page 24, but they make clear that this court has never disavowed the broad language in Diaz, much less reversed its holding, and that Diaz remains controlling authority. And so, Your Honor, if you look at that language, which is a fair and accurate representation of where this court's law is with respect to Diaz and where it is with respect to Begaric, in the government's view, there's no error there, let alone clear or plain or obvious error that would warrant reversal here. And so, unless there are questions, Your Honors, about the jury charge, I'm happy to turn to the Eighth Amendment issue at this point. So, turning to the Eighth Amendment issue, the defendant's contention that Miller v. Alabama and Montgomery v. Louisiana apply to him when he committed murder at the age of 20 cannot stand in light of this court's decision in United States v. Sierra, and in any event was waived. And I'll just spend a moment on the waiver argument here. The defendant's argument, Your Honor, relies on Miller, which was decided in 2012, and Montgomery, which was decided in 2016. Both of those decisions were prior to the original sentencing in this matter. They were both decided prior to the first appeal in this matter, and they were decided prior to the second sentencing in this matter as well. And so, the case law upon which the defendant relies was out there and available to be used. Now, I understand in my co-counsel's reply brief, she raised the argument that developing standards are always developing, and so therefore, it can never be waived. And Your Honor, there's a mechanism for which a defendant can pursue an intervening change in case law or a development along those lines, and that would be a habeas petition. And so, if down the road, you know, the Supreme Court moved the line from 18 to 22 or something along those lines, the defendant in this matter would not be left without a remedy. So, that would be the way. If the Supreme Court made that retroactive, if the Supreme Court made it retroactive, they could perfectly well do that but not make it retroactive, in which case, considering it first and direct appeal, where we are much less limited, would be the appropriate, wouldn't it? Yes, Your Honor. So, that's certainly correct. And with Miller, first Miller was decided, and then Montgomery made it retroactively applicable. And Your Honor is correct to the extent that they did not make the decision retroactively applicable. There would be significant limiting on the habeas petition. But I do think that sort of turns us directly to the merits of this case, Your Honor, which is that this court in Sierra was clear that the line has been drawn at 18. There are consequences for defendants on either side of that line. And to be clear, the material facts of Sierra and the material facts of this case are identical. In both cases, the defendants were older than 18. In both cases, the defendants were convicted of Vicar murder and faced a mandatory life sentence. And in both cases, there was an argument that was raised that Miller applied to them because of scientific developments in brain science. And this court in Sierra acknowledged that Miller was a categorical rule, acknowledged the difficulties of drawing the line at 18, but nonetheless said the line had been drawn and the challenge had to fail. And so here too. And Your Honor, I just, I'd note in closing the district court decision in this matter upon which the defendant relied heavily in the opening brief that was Cruz, that has since been, and the district court there held contrary to Sierra in a summary order. Cruz was vacated and remanded to the district court with instructions to reinstate the life decision. I know I'd asked the clerk of court to circulate a 28-J letter to this panel earlier this week. And so that further undercuts the contention that the defendant is here raising. And so unless there are questions, Your Honor, for these reasons, the government submits that the conviction and the sentence in this matter should be affirmed. Thank you. Ms. Barff, your rebuttal. Thank you. Going to the government's last point on the merits, it's true since the filing of the both sat on that panel and I relied on those cases in my brief and they were not decided in the defendant's favor. I just want to point out that the net effect of those decisions in Sierra and Cruz makes youth and all of its hallmarks irrelevant to the imposition of the harshest prison sentence possible on our youngest adults. And while no circuit court has yet extended Miller, state appellate courts recently in 2019 and 2020 have vacated life sentences for youthful offenders over 18 years old because of factors like chronological age, immaturity, the failure to appreciate risks and consequences, and just the overall inherent incompetencies of youth that are relevant under Miller. So the net effect of Sierra and Cruz stripped the trial court of any discretion to impose a sentence short of life, even when the defendant is a young adult like Mr. Moreau. You know, you have a terribly difficult argument given that the Supreme Court just in the last couple of weeks let an execution go along of somebody who was just barely over 18 when the law is that below 18 executions can't be done. So how can we look at what the Supreme Court did in that case, which I'm not happy about, but that's not my job, and say that this line which we have drawn isn't the one that we have to stick to, whether we like it or not. I mean, there is something absurd about saying kids can't smoke until they're 21 or drink until they're 21 yet can be executed, but that's what they said. Well, I think one thing that the court could do is readdress Cruz en banc. I know that a petition for rehearing was denied in Cruz. I do think other the science associated with youth and social norms are changing. In Cruz, we concluded we were bound by Sierra. I mean, and I think likewise here, unless we go en banc. I mean, you're right about that, but. Well, I'd encourage the court to go en banc here on both Cruz and I think finally expressly overruling McGarrick and Diaz would be very helpful because the criticism over the last two decades hasn't stuck. District courts are still instructing short of what they should be here, and you won't run into these problems in case after case after case over two decades if an en banc court could or even this three-judge panel could recognize this error again here. All right. Well, thank you both. We'll reserve decision and we'll